CHARLES AUSTIN ET AL., PLAINTIFFS IN ERROR, v. CHARLES BROCK, DEFENDANT IN ERROR.

Justice of the Peace: RENDITION OF JUDGMENT. "Upon a verdict the justice must immediately render judgment accordingly." And it is error on his part to delay the rendition of judgment until the next day.

ERROR to the district court for York county. Tried below before NORVAL, J.

*Sedgwick & Power*, for plaintiff in error.

*J. S. Bennett* and *R. S. Norval*, for defendant in error.

COBB, CH. J.

This was an action in the nature of an action of trespass brought before a justice of the peace by the defendant in error against the plaintiffs in error. A trial was had in the justice's court to a jury. A verdict and judgment in favor of the plaintiff in said action, defendant in error. The plaintiffs in error took the said cause to the district court, on error, where the judgment therein was affirmed, and the cause is brought to this court on error.

There is but one point presented, which is, that the judgment of the justice should have been reversed for the reason that said justice did not render judgment in the said cause *immediately*, upon the return of the verdict, but on the next day after the rendition of the verdict.

I copy from the justice's return as contained in the record as follows: "The jury after having heard the proofs and allegations of the parties this 17th day of December, 1883, agreed upon and returned the following verdict." (Here follows the verdict signed by the foreman.) Then follows: "Dec. 18, 1883, 9 o'clock, A.M." (Here follows the judgment.) There can be no doubt, then, in point of fact, that the trial was had and completed, and the verdict returned and received by the justice on the 17th, and the judgment rendered on the 18th day of the month.

Sec. 1002 of the code provides that, "Upon a verdict the justice must immediately render judgment accordingly. When the trial is by the justice judgment must be entered immediately after the close of the trial if the defendant

has been arrested or his property attached; in other cases
it must be entered, either at the close of the trial, or if the
justice then desire further time to consider, on or by the
fourth day thereafter, both days inclusive."

The case of *Huff v. Babbott*, 14 Neb., 150, arose out of
a case tried to a justice of the peace without a jury, and in
which case the defendant's property had been attached.
It seems from the statement of facts in the opinion that
" the trial commenced on the 28th day of September, 1881,
at 1 o'clock P.M.  A jury being waived  *    *    *   the
court took the case under advisement to the 29th day of
September, 1881, at 8:30 o'clock A.M. sharp," at which
day and hour the court rendered judgment for the plaintiff.

Judge MAXWELL, in the opinion of the court reversing
the district court, and reinstating the judgment of the jus-
tice, said : " The object of the statute doubtless is to en-
able a party who has been unlawfully restrained of his lib-
erty to be discharged at the earliest practicable moment in
case no cause of action is proved against him.  So, if his
property is taken from him on an order of attachment, and
the proof fails to show a cause of action, the property shall
be discharged.  But the justice may require time to con-
sider the evidence before rendering a judgment, and it may
be necessary for him to do so before he is prepared to de-
cide.  If a decision is rendered before the justice has time
to consider the evidence there is great danger of his com-
mitting an error which more mature reflection would have
enabled him to avoid.  We therefore are not disposed to
place so narrow a construction on the word " immedi-
ately," as to hold that a delay of a few hours in rendering
judgment is not in compliance with the statute  *    *    *
It is well to require justices to perform their duties in the
mode and within the time required by the statute ; but
their proceedings must be construed in a reasonable man-
ner, and in such a way as will enable them to administer
justice."

I accept the reasoning, as well as the authority, of this case, and if the case at bar falls within the former, the judgment must be affirmed. But let us see if it does. In framing the provision of statute applicable to trials to juries in justice's courts the legislature did not have particularly in view the rights of defendants unjustly arrested, or whose property had been improperly taken on attachment because they made these provisions apply to all cases, and reserved what they had to provide especially for the above classes, for that part of the section where it seemed to be necessary to take their case out of the operation of the provision allowing justices to take time to consider of their judgment.

What then was the purpose of the legislature in enacting a provision in these words? "Upon a verdict the justice must immediately render judgment accordingly." It was to insure to the successful party the benefit of such judgment as he might be entitled to upon the verdict of the jury without delay, and without the chance or danger of the loss, change, or mutilation of such verdict by any means whatever before the rendition of the judgment thereon. This purpose can only be effected by a literal obedience of the statute on the part of the justice.

We have seen while examining the case of *Huff v. Babbott, supra,* that in cases tried to the justice without a jury it may be often necessary for the justice to consume more or less time after the close of a trial proper before he can render a just judgment; but where the judgment is rendered on a verdict no more time is necessary than just sufficient to declare the judgment. The verdict has already determined what the judgment is to be. No consumption of time, by thought or reflection, can add to, or take from, one jot or tittle of the form or substance of the judgment.

The words of a statute should be understood the same as when used in the ordinary business and affairs of life. But this rule is sometimes affected by other rules, as for

instance, that a section or provision of a statute must be so construed as to attach some meaning to each part and word thereof, and when to give such meaning, in full to particular words would rob other words of their plain and manifest meaning, or give them a meaning repugnant to the general scope and meaning of the section.

The word *immediate* or *immediately* when used in the ordinary business and concerns of life does not mean the next day, but that meaning may be given to them by their use in connection with the doing of things, which will or may consume more or less time; but not by its use in connection with the doing of a thing which cannot and does not consume any appreciable time. Thus it is that the word *immediately* when used in connection with the discharge of a duty by a justice, which consists of but half a dozen strokes of the pen, all of which have been unalterably fixed and set before his eyes by another and independent event, must be given its ordinary meaning, but when used in connection with the discharge of a duty which must be prepared for by thought, reflection, comparison, and ratiocination, it may receive a meaning far different, and to require only the doing of the thing with such convenient speed as may be consistent with all the conditions necessary to its full performance. I therefore conclude that, notwithstanding the holding in the case of *Huff v. Babbott, supra*, and in entire harmony with that case, the word *immediately* where it first occurs in sec. 1002 of the code, must be given its ordinary meaning as defined by Webster, and cannot be construed to mean the next day.

The judgment of the district court is therefore reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.